[660 NYS2d 753]

In the Matter of City of New York, Petitioner, v New York State Tax Appeals Tribunal et al., Respondents.

Third Department, July 24, 1997

APPEARANCES OF COUNSEL

*Paul A. Crotty, Corporation Counsel* of New York City *(Robert J. Firestone, Edward F. X. Hart* and *Frances J. Henn* of counsel), for petitioner.

*Isidor D. Friedenberg,* Suffern, for 11814 Homes Corporation and others, respondents.

## OPINION OF THE COURT

PETERS, J.

The sole issue in this proceeding is whether a mortgage recording tax is due on the recordation of a mortgage under which a mortgagor borrows additional funds to reduce the amount owed to a prior mortgagee yet does not increase or add to his indebtedness and further preserves the prior lien on the recordation of the new mortgage.

Respondents 11814 Homes Corporation (hereinafter Homes), Rockingham Tenants Corporation and Sherry Plaza Apartment Corporation are cooperative housing corporations. The facts relevant in the Homes transaction serve as an example of all three transactions. Homes purchased real property from J & M Realty Associates (hereinafter J & M) in December 1983, executing a purchase-money wraparound mortgage in favor of J & M in the amount of $850,000. Under the terms thereof, Homes assumed an underlying mortgage of $625,372 and received a loan from J & M in the amount of $224,628. This wraparound mortgage was recorded in February 1984 and a mortgage recording tax was paid on the additional amount loaned.

In June 1991, Homes executed a mortgage in favor of J & M securing an additional loan of $170,000. The mortgage was recorded in July 1991 and a mortgage recording tax was paid. This mortgage was consolidated with the December 1983 wraparound mortgage pursuant to a written agreement between Homes and J & M, and was also recorded on July 11, 1991. The consolidation resulted in a single lien securing a *total* indebtedness of $1,020,000. At the time of recordation, the principal on the underlying wraparound mortgage had been paid down from $625,372 to $486,412.51. Since the total amount secured under the wraparound mortgage remained unchanged ($1,020,000), the payment of principal on the

underlying mortgage caused the amount financed by J & M to automatically increase from $224,628 to $363,587.49. The $170,000 loan further increased the total amount loaned by J & M under the wraparound mortgage to $533,587.49.

On that same day, Homes executed a mortgage in favor of Queens County Savings Bank in the amount of $513,587.49. This amount was paid directly to J & M. Homes and Queens County Savings Bank executed a consolidated mortgage to form a single lien of $1,000,000, accounted by a consolidation of the $513,587.49 debt with the $486,412.51 debt. This payment to J & M reduced the amount securing J & M's loan from $533,587.49 to $20,000 ($1,020,000 − $1,000,000 = $20,000). The lien securing J & M's loan was not extinguished, however, and that same $513,587.49 lien was re-used to now secure the funds advanced by Queens County Savings Bank under its mortgage. This caused the amount secured by the wraparound mortgage to remain at $1,020,000. Queens County Savings Bank recorded its mortgage in the amount of $513,587.49 and a mortgage recording tax was paid. Homes filed a claim for a refund of that tax which was denied.

The Administrative Law Judge, and ultimately respondent Tax Appeals Tribunal, determined that Homes did not pay down its debt and borrow new funds under an existing or another mortgage but, instead, substituted one debt for another by using the funds borrowed from Queens County Savings Bank to reduce J & M's equity position. Since the total debt remained the same, they concluded that no new mortgage recording tax was due at the time of the recording of the $513,587.49 mortgage. Petitioner thereafter commenced this CPLR article 78 proceeding seeking a review of that determination.

The term "mortgage" is defined for purposes of the mortgage recording tax in Tax Law § 250, amended in 1989 (L 1989, ch 241, § 80 [hereinafter the 1989 amendment]), and such amendment is the focus of petitioner's contention. Tax Law § 250 (2) now provides, in relevant part, as follows: "A contract or agreement by which the indebtedness secured by any mortgage is increased or added to, shall be deemed a mortgage of real property for the purpose of this article, and shall be taxable as such upon the amount of such increase or addition. Where all or part of the indebtedness secured by a mortgage of real property within any city in the state having a population of one million or more has been paid and new funds are advanced or re-advanced which are to be secured by such mortgage, the contract or agreement by which such funds are advanced or re-

advanced shall be deemed a mortgage of real property for purposes of this article, and shall be taxable as such upon the amount of such new funds, except as otherwise provided in section two hundred fifty-three-b of this chapter."*

The Tribunal disagreed with petitioner's contention that the additional funds advanced under the Queens County Savings Bank mortgages were taxable "new funds" since they were used to pay part of the principal secured under J & M's wraparound mortgage lien. It found petitioner's definition in conflict with *Matter of City of New York v State Tax Commn.* (130 AD2d 890), which clearly held that "[t]he mere substitution of one mortgage for another, which creates no additional indebtedness, does not create a new mortgage requiring the payment of a recording tax" (*id.*, at 891, citing *Matter of Bay View Towers Apts. v State Tax Commn.*, 40 NY2d 856, 857). Hence, "[o]nce a mortgage has been given and recorded, it may be changed by a supplemental mortgage and no additional recording tax will be due as long as the amount secured remains the same" (*id.*, at 891).

Finding no basis to support petitioner's definition of "new funds" and concluding that petitioner's interpretation would overturn a body of established case law (*see, Matter of City of New York v Procaccino*, 46 AD2d 594; *Matter of Fifth Ave. & 46th St. Corp. v Bragalini*, 4 AD2d 387) consistent with its own interpretation, the Tribunal concluded that there was "nothing on the face of the amendment, nor in its legislative history, to suggest that it was intended to so drastically change the structure of the mortgage recording tax". The Tribunal further noted that petitioner's interpretation was inconsistent with the definition adopted by the Division of Taxation (hereinafter the Division) in its regulation (20 NYCRR 641.9), wherein "new funds" were defined as "the amount by which the aggregate amount of funds advanced or readvanced under a *prior recorded mortgage* exceeds the amount upon which the mortgage recording taxes were paid when such *prior mortgage* was recorded" (emphasis supplied). Since the funds advanced here were pursuant to a new instrument and not a "prior recorded mortgage", the Tribunal concluded that the petitioner's definition of "new funds" is contrary to the terms of that regulation. Finding that the Tribunal's construction of this statutory provision was not irrational or irresponsible, we give deference to

---

* Additions in text made by Laws of 1989 (ch 241, § 80) are indicated by underscore.

its construction (*see, Matter of Spartalis v State Bd. for Professional Med. Conduct*, 205 AD2d 940, 941, *lv denied* 84 NY2d 807).

We further disagree with petitioner's contention that the effect of the Tribunal's decision is to nullify the amending legislation. A memorandum issued by the Division, partially quoted in its denial of the refund to these respondents, explains that the purpose of the 1989 amendment was "to codify, for purpose of the New York City mortgage recording taxes, a longstanding opinion of the Attorney General that a 'mortgage' includes a contract or agreement whereby 'new funds' are advanced or readvanced and such funds are secured by a mortgage (*see*, 1953 Op. Atty. Gen. 198). 'New funds' are the amount by which the *aggregate* amount of funds advanced or readvanced exceed the amount upon which the mortgage recording tax has been paid." This memorandum also explains that the "amendment to section 250 by Chapter 241 merely clarifies that this interpretation applies as well to the New York City mortgage recording taxes (L. 1971, C. 400, *et seq.*) enacted subsequent to the Attorney General's Opinion". Hence, there remained no basis to support petitioner's contention that the 1989 amendment was intended to overrule existing case law.

Having considered and rejected all remaining contentions and mindful that "taxing statutes, when ambiguous and doubtful, should be construed liberally in favor of the taxpayer" (*Matter of City of New York v Procaccino, supra*, at 595; *see, Matter of 1605 Book Ctr. v Tax Appeals Tribunal*, 83 NY2d 240, *cert denied* 513 US 811), we confirm the Tribunal's determination.

MIKOLL, J. P., CREW III, WHITE and YESAWICH JR., JJ., concur.

Adjudged that the determination is confirmed, without costs, and petition dismissed.